**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **NORTH CAROLINA DIVISION OF SERVICES FOR THE BLIND, N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES** | §<br>§<br>§<br>§<br>§ | |
| *Plaintiff* | §<br>§ | |
| **v.** | §<br>§ | **Case No.  5:19-cv-729** |
| **UNITED STATES OF AMERICA, by and through HONORABLE PATRICK M. SHANAHAN, Acting U.S. Secretary of Defense, HONORABLE MARK THOMAS ESPER, Secretary of the Army, and CONTRACTING OFFICER (Attention: GARY L. STEVENS) for ARMY SOLICITATION No. W9124J-18-R-0025,** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| *Defendant* | §<br>§ | |

**COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF**

NOW COMES Plaintiff, North Carolina Division of Services for the Blind, N.C. Department of Health and Human Services, by and through undersigned counsel, and files this Complaint for Preliminary Injunctive Relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure, against Defendant United States of America, acting by and through (1) Honorable Patrick M. Shanahan, Acting U.S. Secretary of Defense, (2) Honorable Mark Thomas Esper, Secretary of the Army, and (3) Contracting Officer (Attn:  Gary L. Stevens) (collectively the "Army") with respect to Army Solicitation No. W9124J-18-R-0025 ("Solicitation") for food services at Fort Bragg, N.C., alleging the Army's violation of the Randolph-Sheppard Vending Stand Act, 20 U.S.C. §§ 107 *et seq.*, as amended, (hereafter "Randolph-Sheppard Act or "R-SA") with respect to the evaluation of Plaintiff's offer for the Solicitation.  Plaintiff seeks an

injunction to prevent the Army's continued evaluation of proposals and other actions with respect to the Solicitation and to prevent award of any contract pursuant to the Solicitation for food services at Fort Bragg, NC, pending the latter of (i) an arbitration conducted and decided in accordance with to the R-SA with respect to the Army's violations of the R-SA and this Court's review thereof as a final agency action in accordance with the Administrative Procedure Act, or (ii) Plaintiff is awarded the contract.

## I.    PARTIES

1.      Plaintiff, North Carolina Division of Services for the Blind, N.C. Department of Health and Human Services, is the State Licensing Agency ("SLA") for North Carolina pursuant to the R-SA, 20 U.S.C. §§ 107a(a)(5), 107a(e), and 107b.  (herein referred to as "NC-SLA").

2.      Defendant, United States of America, is acting in part by and through Honorable Patrick M. Shanahan, Acting U.S. Secretary of Defense, and Honorable Mark Thomas Esper, Secretary of the Army.   Pursuant to Rule 4(i)(1) (A) and (B) of the Federal Rules of Civil Procedure, both Secretaries Shanahan and Esper, acting in their official respective capacities, may be served with the summons and this Complaint by delivering a copy to Honorable William Barr, Attorney General of the United States, Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, D.C. and by delivering a copy of the summons and this Complaint to the United States Attorney for the Western District of Texas. Defendant is acting principally by and through the Contracting Officer for Solicitation No. W911SF-18-R-0001, who currently is Mr. Gary L. Stevens, Mission and Installation Contracting Command, MICC-Fort Sam Houston. The designation of "Contracting Officer" for Solicitation No. W9124J-18-R-0025 and any Contract resulting therefrom is intended to include any successors to Mr. Gary L. Stevens, whether at Fort Sam Houston or any other installation (specifically including, but not necessarily

limited to, Ft. Bragg, NC)[1].  Pursuant to Fed. R. Civ. P. 4(i)(2), the Contracting Officer may be served by sending a copy of the summons and this Complaint by certified mail to Mr. Gary L. Stevens at his business address of 2205 Infantry Post Road, Bldg. 603, Fort Sam Houston, Texas 78234.

## II. JURISDICTION AND VENUE

3.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1346 as this civil action arises under the laws of the United States, namely the Randolph-Sheppard Act, 20 U.S.C. §§ 107 et seq., as amended, and the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., as amended.  *See*, e.g. *Kansas v. SourceAmerica*, 874 F. 3d 1226, 1251 (10th Cir. 2017). Additionally, this Court has jurisdiction under the All Writs Act, which empowers federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651.

4.     Although NC-SLA has initiated an arbitration action against Defendant pursuant to the R-SA, such filed arbitration does not act as a bar or impediment to this Court's jurisdiction over the issues presented in this Complaint.  *See Kentucky v. United States ex rel.  Hagel*, 759 F.3d 588, 597-599 (6th Cir. 2014) (completing arbitration under the R-SA is not a jurisdictional prerequisite).  Additionally, failure to complete arbitration under the R-SA before filing this Complaint is not a jurisdictional prerequisite either.  *Id.* at 599-600.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events, acts, or omissions giving rise to the claims in this action were

---

[1]   While Gary L. Stevens at Ft. Sam Houston is the procuring contracting officer ("PCO") for the subject Solicitation and award of the contract emanating from the Solicitation, it is believed that the actual administration of performance of the awarded contract will be by the administrating contracting officer ("ACO") located at Ft. Bragg, NC.

caused or done by Contracting Officer Stevens and other Army contracting personnel at Fort Sam Houston, Texas, which is in this district.

## III. NATURE OF THE CASE

6.     The Randolph-Sheppard Act provides employment and economic opportunities for blind persons by establishing a "priority" for operation of "vending facilities" on Federal property, like the food services contract being solicited by the Army at Fort Bragg.

7.     Enacted in 1936, the Randolph-Sheppard Act was amended in 1974, on which occasion Congress explained its motivating principles in significantly strengthening benefits and protections of blind persons under the R-SA, as follows:  "The dignity and pride engendered by the development of skills and entrepreneurial ability represent the finest example of a healthy, vigorous, compassionate society combined with the true expression of an American ideal – self-respect, independence, and meaningful contribution to that society." S Rep. No. 93-937 at 14 (1974) *quoted in Kentucky ex rel. Education and Workforce Development Cabinet, Kentucky Office for the Blind v. United States*, 2014 WL 7375566 (W.D. Kentucky Dec. 29, 2014).

8.     In furtherance of these objectives, Congress mandated that priority be given to the appropriate SLA and its blind vendor on all contracts for "cafeteria" operations on federal property.  20 U.S.C. § 107d-3(e).  "Cafeterias" are construed to include food service operations at military installations like Fort Bragg.  *Nish v. Cohen*, 247 F.3d 197 (4th Cir. 2001).

9.     Defendant expressly made the Solicitation subject to the priority of the R-SA but Plaintiff alleges that Defendant is violating the R-SA in its evaluation of NC-SLA's proposal for the Solicitation which NC-SLA submitted for an on behalf of its licensed blind vendor, Timothy Jones ("Jones").

## IV.    FACTUAL ALLEGATIONS

10.    NC-SLA is the incumbent contractor for the food services contract at Fort Bragg, N.C. ("Current Contract").   Timothy Jones is the blind vendor, licensed by the NC-SLA and assigned to perform the Current Contract.   20 U.S.C. §§ 107, 107a(6), 107e(1).

11.    At issue is Army Solicitation No. W9124J-18-R-0025, which invited proposals for performance of the food services at Fort Bragg, NC ("Future Contract").

12.    In its Solicitation, the Army expressly stated, in relevant part, as follows:

    1.    The Randolph-Sheppard Act (R-SA) applies to this requirement.

        a.    All offerors are hereby notified that this solicitation is subject to the R-SA and the priority it affords to blind vendors for operation of military dining facilities.   The blind have a priority right to operate dining facilities on federal property.

Solicitation, Section I.B.1, page 112 of 126, set forth as part of <u>Attachment 1</u> to this Complaint.

13.    The Army's Solicitation further stated in relevant part, as follows:

    I.    Evaluation Factors for Award

        a.    Basis for contract award.

            *        *        *

            (2) The Randolph-Sheppard Act (R-SA) applies to this solicitation, therefore, priority will be given to the State Licensing Agency (SLA) pursuant to the R-SA.   The priority established by the R-SA applies to award of contracts for operations of cafeterias on Federal property.

Solicitation, Evaluation Factors for Award, page 120 of 126, part of <u>Attachment 1</u> to this Complaint.

14.     In accordance with the R-SA, applicable regulations, and the Solicitation, NC-SLA timely submitted a proposal to Defendant for the Solicitation for and on behalf of Jones, its licensed blind vendor.[2]

15.     Plaintiff alleges that the Army is not providing the priority afforded by the R-SA and as promised by the Solicitation; and, upon information and belief, Plaintiff alleges that the Army is actively engaged in an evaluation of Plaintiff's proposal for the Solicitation in a manner which violates the R-SA.

16.     The R-SA provides a specific and exclusive remedy of arbitration in accordance with R-SA arbitration processes and procedures to resolve disputes between a federal agency and a state licensing agency involving alleged violations of the R-SA.  20 U.S.C. §§ 107d-1(b) and 107d-2; 34 C.F.R. § 395.37.

17.     Pursuant to the provisions of the R-SA, 20 U.S.C. §§ 107d-1(b) and 107d-2, the NC-SLA has filed a Complaint for Arbitration with the Secretary of Education alleging that the Army has stated, in written answers to questions posed and incorporated in the Solicitation, its intention to violate the R-SA and to deny to Plaintiff the priority provided by the R-SA and promised by the Army's Solicitation.  A true and correct copy of the Complaint in Arbitration is appended hereto as <u>Attachment 2</u>.

18.     The NC-SLA's Arbitration Complaint was filed with the Secretary of Education prior to the NC-SLA's submission of its proposal to the Army's Solicitation.  This was in

---

[2]     This process is summarized in *Georgia Vocation Rehabilitation Agency v. United States*, 2:19-cv-00045, 2019 WL 2320878 at *2 (S.D. Ga. May 30, 2019) *quoting Kansas v. SourceAmerica,* 874 F.3 1226, 1231-32 (10th Cir. 2017).

accordance with federal procurement policy that an offeror's objections to erroneous or ambiguous terms which are apparent in a federal solicitation are waived unless made prior to submitting the offer. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed. Cir. 2007).

19.     Plaintiff NC-SLA is an actual offeror for the subject Solicitation, which offer was submitted on behalf of its licensed blind vendor, Jones.

20.     Upon information and belief, Defendant is currently evaluating offers for the subject Solicitation but no award of the Future Contract has been made.

21.     Plaintiff will suffer irreparable harm unless the Army is enjoined from proceeding with evaluation of proposals and other procurement activities in a manner which violates the R-SA and unless the Army is enjoined from awarding the Future Contract to any offeror other than NC-SLA pursuant to the Solicitation until after (i) an arbitration under the R-SA has determined whether the Army has violated and continues to violate the R-SA as provided at 20 U.S.C. §§ 107d-1(b) and 107d-2 and at 34 C.F.R. § 395.37 and (ii) judicial review thereof in accordance with the R-SA at 20 U.S.C. § 107d-2 and the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.*, as amended.

22.     For reasons stated herein, Plaintiff is otherwise entitled to the injunctive relief requested for the reasons set forth herein.

23.     All conditions precedent to relief, if any, have occurred or have been performed.

### V.   THE ARMY'S VIOLATIONS OF THE RANDOLPH-SHEPPARD ACT

**A.     Violation 1:  Army Disregards Sole Authority of the Secretary of Education to Determine Whether the Blind Vendor Can Perform Food Service Operation at Ft. Bragg at a Reasonable Cost.**

24.     As regards determination of price reasonableness of the NC-SLA's proposal, the R-S Act at 20 U.S.C. § 107d-3(e) provides as follows:

**e. Regulations establishing priority for operation of cafeterias:**

The **Secretary [of Education]**, through the Commissioner [of the Rehabilitation Services Administration], shall prescribe regulations to establish a **priority** for operation of cafeterias on Federal property by blind licensees when **he determines**, on an individual basis and after consultation with the head of the appropriate installation, that such operation can be provided at a **reasonable cost** with food of high quality comparable to that currently provided to employees, whether by contract or otherwise. (Emphasis and bracketed material added).

25.    The regulation promulgated pursuant to the cited statute to establish this statutory priority for blind licensees is 34 C.F.R. § 395.33(a) which states, in relevant part, as follows:

**§ 395.33  Operation of cafeterias by blind vendors**

(a) **Priority** in operation of cafeterias by blind vendors on Federal property **shall be afforded when the Secretary determines, on an individual basis**, and after consultation with the appropriate property managing department, agency, or instrumentality, **that such operation can be provided at a reasonable cost**, with food of a high quality comparable to that currently provided employees, whether by contract or otherwise. (Emphasis added.)

26.    Concerned about ambiguous language in the Solicitation which could be interpreted as being incompatible with the authority of the Secretary of Education to determine the cost reasonableness of the blind vendor's proposed operation in accordance with 20 U.S.C. § 107d-3(e), the NC-SLA posed the following written question to the Army's procurement personnel:

NC-SLA's Question 61:  In the Randolph-Sheppard Act at 20 U.S.C. § 107d-3(e), Congress mandated that the Secretary of Education will determine whether the blind licensee (through the State licensing agency's proposal) can provide a food service operation at Ft. Bragg for a reasonable cost.  The Solicitation makes no mention of the Secretary or her price reasonableness determination.  Please confirm that the Army will adhere to the statutory requirement that the Secretary of Education – and not the Contracting Officer or any other Army official – will determine that price reasonableness of the State licensing agency's proposal.

This question was published in Solicitation 003, Attachment Q, <u>Attachment 3</u> hereto (3rd page).

27.     The Army responded to NC-SLA's Question 61 as follows:

**Army Answer No. 61.**  The Secretary of Education does not render or create any Source Selection document relating to Price Reasonableness.   It is the responsibility of the Contracting Officer to render any Price Reasonableness Determinations.

*Id.*

28.     The Army's answer contradicts the sole authority vested by Congress in the R-SA at 20 U.S.C. § 107d-3(e) for the Secretary of Education, not a contracting officer, to determine the price reasonableness of the blind vendor's proposed operation of the food services contract as reflected in the SLA's proposal.

29.     Despite the plain language of the statute – "when he determines on an individual basis" – the Army maintains that the Secretary of Education plays no role whatsoever in determining the cost reasonableness of the blind vendor's operation as proposed in the SLA's offer.

30.     Aggrieved by the Army's action, determined by the NC-SLA to be in violation of the R-SA, the NC-SLA exercised its right under the R-SA to "file a complaint with the Secretary who shall convene a panel to arbitrate the dispute."  R-SA 20 U.S.C. 107d-1(b).  The NC-SLA's Arbitration Complaint, Attachment 2 hereto, at page 2-4.

31.     Although the Army was served by the NC-SLA's Arbitration Complaint on or about May 24, 2019, the Army has taken no action as of the date of this filing to bring itself in compliance with 20 U.S.C. § 107d-3(e) and remains in violation of the R-SA.

**B.     Violation 2.  Army Refusal to Confirm that NC-SLA's Proposal Need Only Be "Reasonable" in Cost Not "Lowest".**

32.     The Army Solicitation established evaluation criteria as follows:

**Evaluation Factors for Award**

I.      Evaluation Factors for Award.

a.      Basis for contract award.

(1)      Award will be made to a single offeror whose timely offer is deemed responsible IAW FAR, whose proposal conforms to the solicitation requirements and whose proposal, judged by an overall assessment of the evaluation criteria and other considerations specified in this solicitation, represents the Lowest Priced Technically Acceptable (LPTA) offer.

(2)      The Randolph-Sheppard Act (R-SA) applies to this solicitation, therefore, priority will be given to the State Licensing Agency (SLA) pursuant to the R-SA. The priority established by the R-SA applies to the award of contracts for operation of cafeterias on Federal property.  After initial evaluation and based on the ratings of each proposal against all evaluation criteria, a Competitive Range shall be established comprised of all of the most highly rated proposals.

*See* Solicitation page 120 of 126, Attachment 1 hereto.

33.      It was unclear to NC-SLA whether the Army intended to apply only paragraph (2) above to the NC-SLA's proposal or intended to apply both paragraphs (1) and (2) to the NC-SLA's proposal.  In other words, would NC-SLA be given priority in award only if the NC-SLA proposal was lowest in price?

34.      In an effort to clarify this issue, NC-SLA posed Question 60 to the Army as follows:

**NC-SLA Question 60.**  How will the Agency ensure the requirements of the RS-A are followed with regard to evaluation of the SLA's proposal in the context of this RFP that is otherwise subject to award as a LPTA under [FAR] 52.212-02? Please clarify the RFP to state that the LPTA criteria for selection of the awardee will NOT be applied to the proposal submitted by the SLA.

*See* Solicitation Amendment 003, Attachment Q, attached as Attachment 3 hereto, third page.

35.      NC-SLA thought this was a straightforward question:  did LPTA apply to the SLA or not?  Rather than a "yes" LPTA does apply, or "no" LPTA does not apply to the NC-SLA's proposal, the Army responded as follows:

**Army's Answer No. 60.**  The Agency will ensure that the requirements of the R-SA are followed by adhering to and complying with all laws and regulations relevant to the acquisition of FFS.  The Agency will utilize LPTA in accordance [with] accepted DOD Source Selection Guidelines and with the understanding that the priority established under R-SA for State Licensing Agencies will be followed.

*Id.*

36.    As shown, when given the chance to disavow any intention of applying "Lowest Price" criterion to the NC-SLA's proposal, the Army equivocated.

37.    The fact that the Army refers to "utilize LPTA" in its Answer to NC-SLA's Question 60 can only be interpreted as an intention by the Army to apply LPTA criteria to the NC-SLA's proposal.  Otherwise, the Army would have simply and plainly stated that the NC-SLA's proposal was not subject to LPTA evaluation criteria.

38.     Because the Army did not clearly and unequivocally confirm in a simple sentence that LPTA criteria did not apply to NC-SLA proposal, NC-SLA has protected its rights by objecting to this procurement deficiency prior to the submission of offers by filing an Arbitration Complaint with the Secretary in accordance with the R-S Act, 20 U.S.C. §§ 107d-1(6) and 107d-2.

39.    Pursuant to the R-S Act, particularly 20 U.S.C. § 107(d-3(e), the NC-SLA's proposal is entitled to priority in award merely by being reasonable in price as determined by the Secretary of Education, not lowest in price.

40.    If the NC-SLA's proposal must be lowest in price, there is no priority at all extended to the NC-SLA. The Army's failure to disavow, in clear and unmistakable terms, an intention to subject the NC-SLA to LPTA evaluation criteria constitutes a violation of the R-S Act at 20 U.S.C. § 107d-3(e). Despite the Army's being aware since receipt of NC-SLA's Arbitration Complaint, on or about May 24, of NC-SLA's objection to the Army's lack of clarity

on its intention to apply, in violation of the R/SA, LBTA criteria to NC-SLA's proposal, the

Army has offered no denial to NC-SLA's allegation, has made no clarification, has given no

further explanation, and has not taken corrective action.

## VI.    R-SA ARBITRATION

41.     The R-SA at 20 U.S.C. § 107d-1(b) provides, in relevant part as follows:

> Whenever any State licensing agency [like NC-SLA] determines
> that any. . .  [federal agency, like the Army, here]. . .  is failing to
> comply with the provisions of this Act or any regulations issued
> thereunder. . .  such licensing agency may file a complaint with the
> Secretary [of Education] who shall convene a panel to arbitrate the
> dispute pursuant to [20 U.S.C. § 107d-2] and the decision of such
> panel shall be final and binding on the parties except as otherwise
> provided in this Act.

42.     The R-SA at 20 U.S.C. § 107d-2 further provides, in relevant part, as follows:

> **§ 107d-2 Arbitration**
>
> a.    **Notice and hearing.**  Upon receipt of a complaint filed under [20 U.S.C. §
> 107d-1], the Secretary [of Education] shall convene an ad hoc arbitration
> panel as provided in subsection (b).  Such panel shall, in accordance with the
> provisions of [5 U.S.C. §§ 701 et seq.]
> b.    Composition of panel; designation of chairman; termination of violations.
>
> *          *          *
>
> (2) . . . .  If the panel appointed pursuant to paragraph (2) finds that the acts or
> practices of any [federal agency] are in violation of this Act or any regulation
> issued thereunder, the head of such. . . agency. . .  shall take other action as may
> be necessary to carry out the decision of the panel.

43.     Arbitration pursuant to the R-SA is the comprehensive and exclusive remedial

scheme for administering allegations by a State licensing agency of violations by a federal

agency of the R-SA.

44.     Because of this exclusivity of R-SA arbitration, traditional avenues for resolving

procurement issues at the Court of Federal Claims, pursuant to the Tucker Act, 28 U.S.C. § 1491,

12

or before the Government Accountability Office pursuant to the Competition in Contracting Act of 1984, 31 U.S.C. §§ 3551-3556, are unavailable. *See Colorado Dept. of Human Services v. United States*, 74 Fed. Ct. 229 (2006) (Tucker Act); *Georgia Business Enterprise Program-Vocational Rehabilitation Agency*, Comp. Gen. Dec. B-416182.2 (November 23, 2018)(CICA).

45.     However, "[s]overeign immunity bars the arbitration panel (or a federal court) from granting a State licensing agency damages in the event the Army is found to have violated the Act. *Commonwealth of Kentucky, Education and Workforce Development Cabinet, Office for the Blind v. United States ex rel. Hagel*, 759 F.3d 588, 599-600 (6th Cir. 2014) *accord*; *Kansas v. United States*, 171 F Supp. 3d 1145, 1155-56 (D. Kansas 2016) ("Without an injunction, [the Kansas SLA] would suffer substantial economic loss for which no remedy [at law] exists even if it prevails in arbitration.")

46.     Consequently, the proper course of action is "a stay or an injunction against contract award pending arbitration." *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 110 (D.C. Cir. 1986).

## VII.     PLAINTIFF'S ENTITLEMENT TO INJUNCTIVE RELIEF

### A.     Generally

47.     NC-SLA is entitled to injunctive relief enjoining Defendant from proceeding with the follow-on procurement while the arbitration is pending before the Department of Education.

48.     In deciding whether to grant a temporary restraining order and preliminary injunction, the Court considers four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause harm to others; and (4) the impact of an injunction upon the public interest. *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016); *Petrella v. Brownback*, 787 F.3d

1242, 1257 (10th Cir. 2015); *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). No single factor is dispositive. Trial courts are to balance the four factors and not consider them prerequisites to the issuance of a temporary restraining order or preliminary injunction.

49.    A plaintiff "may be protected against future harm not yet realized through a prospective injunction." *M. D. by Stukenberg v. Abbott*, 907 F.3d 237, 253 (5th Cir. 2018) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (stating that "[i]t would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them[,]" and "a remedy for unsafe conditions need not await a tragic event"); *Hoptowit v. Spellman*, 753 F.2d 779, 783–84 (9th Cir. 1985); *Gates v. Collier*, 501 F.2d 1291, 1304 (5th Cir. 1974)).  It is "not necessary that a wrongful act have been actually committed before a court of equity will interfere, since if this were required it would in most cases defeat the very purpose for which the relief is sought, by allowing the commission of the act that the complainant seeks to restrain." 43A C.J.S. Injunctions § 49.  Federal district courts have authority to enjoin future conduct when the facts show that a "future breach is threatened" or there is conduct that "indicates future noncompliance" with a controlling rule or standard. *Westmoreland Coal Co., Inc. v. Intl. Union, United Mine Workers of Am.*, 910 F.2d 130, 138 (4th Cir. 1990); *accord* Restatement (Second) of Torts § 933 (1979) (injunction may issue where there is "action or inaction that, under the circumstances, shows that there is a dangerous probability that [the defendant] will commit a tort").

50.    In similar circumstances, federal district courts have exercised their jurisdiction to issue a temporary restraining order or to grant a preliminary injunction to maintain the status quo while an SLA's challenge under the R-SA is pending before an arbitration panel. *See Georgia*

*Vocational Rehabilitation Agency, supra*, 2019 WL 2320878 at *7 citing eight other federal district court decisions including *Johnson v. United States*, No. EP-14-cv-00317-DCG, 2014 WL 12540469, at *10 (W.D. Tex. Sept. 12, 2014).

**B.     Four Factors Test**

    *1.  NC-SLA is Likely to Succeed on the Merits of the Arbitration.*

        **a.  The Secretary's sole authority under the R-SA to determine price reasonableness of the NC-SLA's proposal**

51.     The plain language of R-SA at 20 U.S.C. § 107d-3(e) unambiguously and unequivocally directs that the Secretary of Education shall determine whether a blind vendor's operation of "cafeterias" (including military food service contracts like the one at Fort Bragg) can be provided at a reasonable cost.  Congress mandated "when he determines on an individual basis" in reference to the Secretary's authority to judge the price reasonableness of the blind vendor's food service operation as proposed in the NC-SLA's offer.

52.     The import of this plain language has been confirmed by the R-SA arbitration decisions, which hold that the Secretary, and not the Contracting Officer, has the statutory authority to determine whether the blind vendor's operation can be provided at a reasonable cost.  *See Georgia Vocational Rehabilitation Agency, supra,* 2019 WL 2320878 at *14 (citing decisions by arbitration panels in Colorado and Ohio).  These arbitration decisions also confirm that the Secretary may not be excluded from the process, as the Army intends to do here.  *See id.*  As the Ohio arbitration panel explained:  "[T]he statutory and regulatory scheme make it clear that an SLA's bid cannot be rejected without consulting with the Secretary of Education who makes the final decision." *Id.* (quoting arbitration panel decision).

53.     In answer to NC-SLA's Question 61 the Army stated its intention not to involve the Secretary at all in the determination of the price reasonableness of Jones' food service operation at Fort Bragg as reflected in the NC-SLA's proposal for the subject Solicitation.

54.     The Army states its Contracting Officer alone makes the determination of price reasonableness of the NC-SLA's proposal. The Contracting Officer is nowhere mentioned in the R-SA.

### b. Under the R-SA, the NC-SLA's proposed price need only be reasonable, not lowest.

55.     Closely aligned with the first point of who determines the reasonableness of the SLA's proposed price, is the second point that pursuant to the R-SA the NC-SLA's proposal price need only be reasonable, not lowest.

56.     If the NC-SLA's proposed price had to be lowest of all offers submitted, then obviously the SLA would receive no "priority" at all under the R-SA.  The R-SA priority is manifested in two ways:  the Secretary's determination as regards the SLA's proposed pricing and that the SLA's proposed price need only be "reasonable" in the Secretary's judgment.

57.     The likelihood of NC-SLA's success on the merits of these two issues is summed up by the following: "[The] bidding system allows the Secretary to determine whether the blind operator's cost is 'reasonable'" and the blind vendor is entitled to priority under the R-SA "even if [its bid] is higher than some others." *Randolph-Sheppard Vendors of America v. Harris*, 628 F.2d 1364, 1367 (DC. Cir. 1980).

### 2. *NC-SLA and Its Blind Vendor Will Suffer Irreparable Harm If the Injunction Is Not Issued.*

58.     NC-SLA will be irreparably harmed should Defendant proceed with this procurement before NC-SLA has an opportunity to pursue its arbitration rights under the R-SA.

The full food service contract at Fort Bragg represents the only significant source of revenue for NC-SLA's blind vendor, Jones, under the R-SA program.  He will be devastated.

59.     The Contract at Ft. Bragg also provides significant revenue for NC-SLA because, as authorized by 20 U.S.C. § 107b(3), Jones pays a set-aside fee to NC-SLA from the proceeds of the Contract which helps to support the program for all licensed vendors amounting to tens of thousands of dollars each year.  The income generated by set aside fees received from the Ft. Bragg contract cannot be replaced by any other source available to the NC-SLA. NC-SLA will also suffer additional economic harm because the proceeds which it receives from the Ft. Bragg Contract are matched under Federal programs supporting SLAs in the amount of $3 for every dollar in revenue generated by the SLA.  These fees are irreplaceable for support of NC-SLA's operations and for the benefit of NC-SLA's blind vendors as a group.

60.     Sovereign immunity bars an award to NC-SLA for monetary damages for a violation of the R-SA. Therefore, NC-SLA has no adequate remedy at law and no other recourse if it is not able to enjoin Defendant from proceeding with this procurement pending the outcome of the arbitration. *Kansas v. SourceAmerica*, 874 F.3d 1226, 1251 (10th Cir. 2017); *Kentucky v. United States, ex rel. Hagel*, 759 F.3d 588, 599-600 (6th Cir. 2014).

61.     Additionally, NC-SLA will suffer irreparable harm that cannot be compensated in money damages should Defendant proceed with this procurement before the R-SA arbitration proceeding is concluded. Should the procurement proceed and award is made to another in violation of the R-SA, NC-SLA will lose its status as the incumbent contractor and will also lose its team of workers currently performing under the incumbent contract.  Loss of incumbent status constitutes irreparable harm.  *See Georgia Vocational Rehabilitation Agency, supra*, 209 WL 2320878 at *11.

62.     NC-SLA will also suffer irreparable harm by being denied the contract priority right that Congress established for it under the R-SA. The denial of this right cannot be fully compensated by money damages. Furthermore, public policy favors economic stability and opportunities for the blind, matters not otherwise compensable by monetary damages.

63.     Such loss of profit from a lost opportunity to obtain a federal contract because of wrongful Government action by itself is sufficient to constitute irreparable harm. *Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Ct. 618, 627 (2005). In *Kansas v. United States*, 171 F. Supp. 3d 1145, 1155, 1157 (D. Kansas 2016), the blind manager's loss of his job was considered to constitute irreparable harm. Because "adequate compensatory or other corrective relief" will not be available, this factor weighs toward a finding of irreparable harm. *Id.* at 1157, (*quoting Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

### 3.   *Granting the injunction will not cause harm to others.*

64.     There will not be substantial harm to Defendant or others during the time a temporary restraining order and preliminary injunction is in effect. NC-SLA can and will continue to provide all required full food services at Fort Bragg until such time as the R-SA arbitration concludes and will do so under the terms of the incumbent contract.

65.     This does not prejudice Defendant or require that Defendant violate other procurement laws since the Act expressly permits Defendant to enter into direct negotiations with NC-SLA for continued services, if necessary. *See* 34 C.F.R. § 395.33(d).

### 4.   *Impact of an injunction upon the public interest.*

66.     During the time an injunction is in place, Defendant will continue to receive the same full food services from NC-SLA that it currently receives. Benefits to the wider

public would continue to be served during the time an injunction is in effect, as the purposes of the R-SA to provide gainful employment for qualified blind vendors would continue to be fulfilled and food services will continue to be provided.

67.    Furthermore, the public interest is met by allowing NC-SLA the time necessary to resolve its dispute with Defendant through the arbitration procedure mandated by Congress under the R-SA. Here, the only effect of granting a temporary restraining order and preliminary injunction will be to preserve the status quo pending the outcome of the arbitration with Defendant. Thus, all the equities and other relevant factors weigh heavily in favor of granting the requested injunction. NC-SLA has everything to lose if this relief is not granted, but Defendant will lose nothing if an injunction is granted.

68.    For the foregoing reasons, NC-SLA respectfully submits that no bond or security is necessary for a Temporary Restraining Order and Preliminary Injunction to issue and requests that such requirement under Fed. R. Civ. Proc. 65(c) be waived.  Further justifying a waiver of the bond requirement in this case, the NC-SLA was created, and Jones (the blind vendor) was licensed by the NC-SLA, for the purpose of implementing Congressional policy under the R-SA. As such, Plaintiff is the functional equivalent of a federal instrumentality that should be exempt from bond requirements as provided in Fed. R. Civ. Proc. 65(c).

<u><strong>COUNT II:</strong></u><br><u><strong>All Writs Act.</strong></u>

69.    Plaintiff alternatively seeks a preliminary injunction under the All Writs Act. *See V.N.A. of Greater Tift Cty., Inc. v. Heckler*, 711 F.2d 1020 (10th Cir. 1983). The All Writs Act empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This expansive grant of authority includes a "limited judicial power to preserve the

court's jurisdiction or maintain the status quo by injunction pending review of an agency's action through prescribed channels." *Arrow Transp. Co. v. Southern Ry. Co.*, 372 U.S. 658, 671 n. 22, (1963).

70.     This Court has jurisdiction to hear the appeal of the arbitration panel's decision or a final agency action under Chapter 7 of Title 5 pursuant to 20 U.S.C. § 107d.

71.     An injunction is necessary to preserve this Court's jurisdiction and to maintain the status quo so irreparable harm is not suffered by NC-SLA pending the decision of the arbitration panel.

72.     In order to justify the exercise of jurisdiction under the All Writs Act, the plaintiff must "make a showing of irreparable injury sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions . . . ." *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974).

73.     "The proper analysis adjusts the standard requirements for the requested preliminary injunction in light of (1) whether refusal to grant the injunction will defeat the court's review jurisdiction and (2) whether Congress intended to permit or to preclude a status quo injunction." *V.N.A. of Greater Tift Cty., Inc.*, 711 F.2d 1020, 1029 (11th Cir. 1983), *cert. denied*, 466 U.S. 936 (1984).

74.     Because Plaintiff will suffer irreparable harm if an injunction is not entered to maintain the status quo pending arbitration, Plaintiff requests injunctive relief under the All Writs Act.

## VIII.   PRAYER

Plaintiff prays that an expedited hearing be held on this request for a preliminary injunction and that this Court issue an injunction which:

1.    enjoins Defendant, its agencies and departments, from continuing with the ongoing procurement activity identified in Solicitation No. W9124J-10-R-0025, including the receipt of proposals, evaluation of any proposals submitted in response to Solicitation No. W9124J-18- R-0025, or making any contract award in connection with the Solicitation until such time as the R-SA arbitration proceeding required by the Act is concluded, or NC-SLA is awarded the contract; and

2.    Plaintiff also request such other relief as this Court deems just and appropriate.

This the 21st day of June 2019.

Respectfully submitted,

**NORTH CAROLINA DIVISION OF SERVICES FOR THE BLIND, N.C. DEPARTMENT OF HEALTH AND HUMAN SERVICES**

*/s/  Peter A. Nolan*
Peter A. Nolan
Attorney-In-Charge
Texas Bar No. 15062600
pnolan@winstead.com
Andrew J. Schumacher
Texas Bar No. 24051310
aschumacher@winstead.com
Winstead PC
401 Congress Avenue, Suite 2100
Austin, TX 78701
(512) 370-2885 F: (512) 370-2850

**COUNSEL FOR PLAINTIFF**